J-A21014-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TRACY THOMAS, | |
| Appellant | No. 446 EDA 2013 |

Appeal from the Judgment of Sentence August 29, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011791-2010

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 19, 2014**

Tracy Thomas appeals from the August 29, 2012 judgment of sentence of eighteen and one-half to thirty-seven years imprisonment that the trial court imposed after a jury convicted him of robbery, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possession of an instrument of crime ("PIC").  After thorough review, we affirm.

At approximately 9:00 pm on July 14, 2010, the victim, Donald Odom, was drinking at the Crab House Bar in Philadelphia.  N.T., 4/10/12, at 68-71, 85.  While Mr. Odom was seated at the bar, Appellant approached him,

_____

[*]  Retired Senior Judge assigned to the Superior Court.

brandished a gun, and demanded Mr. Odom's wallet. *Id*. at 71. Appellant took Mr. Odom's money, keys, and cellular telephone. *Id*. at 71-73.

After the incident, Mr. Odom reported the robbery to the police and identified Appellant from a photographic array of eight individuals. *Id*. at 77-78. Mr. Odom signed a police statement confirming that he selected Appellant's image from the array of photographs. However, at Appellant's preliminary hearing, Mr. Odom failed to identify Appellant as the robber. *Id*. at 100-101. During that proceeding, Mr. Odom further claimed that he did not have a very good chance to see the assailant and that he was inebriated when he signed the police statement. *Id*. at 106-107. Nevertheless, during the ensuing trial, Mr. Odom again identified Appellant, who was present in court, as his assailant. *Id*. at 73-74, 109-111.

Philadelphia Police Officer James Battista testified during the trial that he responded to the initial radio call and compiled the first police report at Mr. Odom's home approximately four blocks from the Crab House Bar. *Id*. at 123, 126, 129. Throughout his then two-and-one-half years of service, Officer Battista interacted with several hundred individuals under the influence of drugs and alcohol. *Id*. at 128. Officer Battista indicated that Mr. Odom was very upset about the robbery but coherent. *Id*. at 127-129. The officer did not detect the odor of alcohol on Mr. Odom, and he did not appear intoxicated. *Id*. at 127. Officer Battista was able to fully understand everything Mr. Odom was saying. *Id*. at 129. Mr. Odom relayed the details

of the robbery to Officer Battista, who recorded the information on the police report. *Id*. at 135.

Additionally, Philadelphia Police Officer John Maha testified during the trial that he responded directly to the Crab House Bar. *Id*. at 151. He indicated that upon arrival, he was directed to the bar's surveillance system to review a video recording of the robbery. *Id*. at 152. Officer Maha testified that upon reviewing the video surveillance tape, he recognized Appellant as the perpetrator wielding a firearm in the bar. *Id*. at 153. He further explained that he was familiar with Appellant from the neighborhood in that Appellant frequented the corner located at the intersection of 22nd Street and Latona Street. *Id*. at 153-154. Officer Maha continued that he patrols the area on a daily basis, Appellant is very visible in that neighborhood, and he observes him almost daily. *Id*. at 153, 157. Officer Maha added that he has conducted approximately six pedestrian investigations of Appellant. *Id*. at 154.

Upon recognizing Appellant from the surveillance video, Officer Maha broadcasted Appellant's name over the police radio. *Id*. at 155. The Commonwealth also played the surveillance video for the jury. *Id*. at 156. Officer Maha confirmed that the material on the video played in the courtroom was identical to the footage he viewed on the night of the robbery. *Id*. at 156.

Philadelphia Police Detective James Powell testified that he was assigned to investigate the robbery of Mr. Odom, whom had accompanied police officers to the South Detective's Division approximately one hour after the July 14, 2010 incident. *Id*. at 175-176. He described Mr. Odom's demeanor as annoyed but cooperative. *Id*. at 178. Detective Powell did not detect alcohol on Mr. Odom and he did not believe him to be intoxicated. *Id*. Detective Powell testified that he has come into contact with thousands of people under the influence of drugs and alcohol in his personal life and interacted with intoxicated people in his professional service. *Id*. at 179. He pointed out that Mr. Odom was coherent and capable of explaining the assault. *Id*. at 179-180.

Detective Powell also testified that based upon his conversation with Officer Maha, he prepared a computerized photographic array containing photographs of eight individuals, one of which depicted Appellant. *Id*. at 181. He continued, "I showed the complainant those eight photos on my screen, at which time he selected this defendant. He circled [Appellant's picture] and signed the photo array, stating that [Appellant] was the male that robbed him inside the bar." *Id*. Thereafter, Detective Powell went to the Crab House Bar and viewed the surveillance video for himself. *Id*. at 182.

Philadelphia Police Officer Shaun Parker testified that he apprehended Appellant at approximately 3:00 a.m. on August 1, 2010, following a

protracted motor vehicle pursuit of an SUV that Appellant was occupying as a passenger. *Id*. at 163-167. Officer Parker previously received Officer Maha's identification of Appellant as the assailant in the Crab House Bar robbery, and he was looking to arrest Appellant on August 1, 2010. *Id*. at 168-169. Officer Parker initially observed Appellant on 2300 Garnett Street, standing outside of a black Dodge SUV and speaking with the operator of the vehicle. *Id*. at 164-165. Officer Parker noticed the butt of a firearm protruding from the waistband of Appellant's pants. After seeing Officer Parker approach in a marked police car, Appellant climbed into the backseat of the SUV, and the police chase ensued. *Id*. at 165-167. When the police finally stopped the vehicle, they recovered a black nine-millimeter Taurus from underneath the front seat of the SUV. *Id*. at 169, 172.

Based on the foregoing evidence, on April 11, 2012, a jury convicted Appellant of robbery, two firearms violations, and PIC. On August 29, 2012, the trial court imposed an aggregate term of eighteen and one-half to thirty-seven years imprisonment, which is the statutory maximum punishment for each of the four offenses. This timely appeal followed the denial of Appellant's counseled post-sentence motion.[1] While Appellant complied with

---

[1] While the post-sentence motion was pending, Appellant filed a *pro se* PCRA petition. However, since Appellant was represented by trial counsel when he purported to file his *pro se* PCRA petition, that filing was a legal nullity. *See Commonwealth v. Figueroa*, 29 A.3d 1177 (Pa.Super. 2011)
*(Footnote Continued Next Page)*

Pa.R.A.P. 1925(b), the record was transmitted to this Court without a Rule 1925(a) opinion because the judge that presided over the jury trial and sentencing proceeding no longer sat in Philadelphia County.

Appellant presents the following issues for our review:

1. The trial court erred by permitting Officer John Maha to give his lay opinion that it was Appellant in the video footage of the robbery, because this testimony was not helpful to the jury and because the probative value of the testimony was outweighed by its prejudice.

2. The trial court erred by failing to grant Appellant's request for a mistrial after Officer John Maha gave prejudicial testimony that he had conducted several pedestrian investigative stops on Appellant based on his reasonable belief that appellant was engaged in criminal activity and that most officers in the district knew Appellant and where he lived, which created an impermissible inference to the jury that Appellant had a prior criminal history and denied Appellant his right to a fair trial, the presumption of innocence, and due process.

3. The trial court gave an inadequate **Kloiber** charge regarding the eyewitness identification by failing to inform the jury of specific factors that required the jury to regard the identification by Mr. Donald Odom with caution, factors which included Mr. Odom's previous testimony that he did not have an opportunity to clearly observe the perpetrator and that he was inebriated at the time he perceived the event.

4. The trial court erred and abused its discretion in imposing the statutory maximum sentencing allowed by law, where said sentence was unreasonable and manifestly excessive.

Appellant's brief at ii–iii.

_(Footnote Continued)_ ───────────────

("Since counsel represented Appellant, the _pro se_ [post-trial] motions were legal nullities").

Appellant's first contention implicates the trial court's admission of evidence relating to Officer Maha's identification of Appellant in the surveillance video. Our Supreme Court reiterated the relevant principles as follows:

> The trial court's decision to admit evidence is subject to review for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Hairston*, 84 A.3d 657, 664-665 (Pa. 2014) (internal quotation marks and citations omitted).

Herein, Appellant argues that the trial court erred when it allowed Officer Maha to discuss his recognition of Appellant on the bar's surveillance video. Specifically, he contends it is error for a court to permit a lay witness to present opinion testimony regarding the identity of a suspect from video or photograph. He asserts that the error is exacerbated where, as here, the lay witness is a police officer. He maintains that permitting Officer Maha's opinion testimony in the context of a quasi-expert gave the evidence undue significance and ultimately removed the fact-finding function from the jury.

Stating that his argument regarding Officer Maha's putative lay opinion raises an issue of first impression in Pennsylvania, Appellant cites a string of case law from various federal jurisdictions for the legal proposition that lay opinions of identification should be reserved for limited scenarios where the jury would be unable to determine identity and the lay witness has a

familiarity that makes him better suited to make a correct identification. The Court of Appeals for the Eighth Circuit outlined this position as follows:

> A witness's opinion concerning the identity of a person depicted in a surveillance photograph is admissible if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury. This criteria is fulfilled where the witness is familiar with the defendant's appearance around the time the surveillance photograph was taken and the defendant's appearance has changed prior to trial.

*United States v. Farnsworth*, 729 F.2d 1158, 1160 (8th Cir. 1984). Specific examples of circumstances that courts have found to warrant lay opinions regarding identification are: (1) the poor condition of the image being viewed, *United States v. Jackman*, 48 F.3d 1, 4-5 (1st Cir. 1995); *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005) (same); or (2) the accused wore a disguise during the offense or subsequently altered his appearance. *United States v. Pierce*, 136 F.3d 770, 774-775 (11th Cir. 1998).

The Commonwealth counters that Appellant's argument and his concomitant reliance upon the federal case law is unwarranted because Officer Maha did not proffer any opinion testimony, lay or otherwise. First, the Commonwealth highlights that Mr. Odom identified Appellant as the assailant earlier in the trial. It continues that, rather than inform the jury of his opinion, in actuality, Officer Maha's testimony simply explained why he broadcasted Appellant's name over the police radio, *i.e.*, upon viewing the surveillance video, he recognized Appellant from prior police interactions in

the neighborhood, and he broadcasted that information accordingly. Hence, the Commonwealth posits that Officer Maha's testimony was essential to explain the manner in which the police were able to identify Appellant and to clarify how Detective Powell knew to include Appellant's photograph in the array that he prepared for Mr. Odom. It also explained how Officer Parker knew to apprehend Appellant for the offense when he observed him on Garnett Street approximately two weeks after the robbery. For the reasons discussed below, we agree that no relief is due.

As noted, Appellant invokes several federal cases to support his position that the trial court erred in failing to apply the two-part analysis to determine the admissibility of Officer Maha's putative lay opinion testimony. All of those cases are distinguishable because, in each, the prosecution elicited the lay opinions to establish identification or to enhance identification evidence already adduced. *E.g. Farnsworth*, *supra* at 1160 ("To buttress this identification evidence, the government elicited lay opinion evidence from three witnesses who testified that the man wearing the security guard uniform in the surveillance photographs was Farnsworth."); *Jackman*, *supra* at 3 ("[Three witness] also testified at trial, offering their opinions as to the identity of the man in the . . . robbery photographs as is sometimes permitted under Fed.R.Evid. 701, which allows non-expert opinion testimony under certain conditions"); *Dixon supra* at 542 ("Each witness was to testify at trial that, in their respective lay opinions, the suspect depicted in a

photograph taken by a bank surveillance camera during the attempted extortion was, in fact, Dixon."); and **Pierce**, **supra** at 773 ("The government also called two witnesses familiar with Pierce's appearance, both of whom had previously identified Pierce as the individual depicted in a bank surveillance photograph of the robbery. Both testified that when shown a bank surveillance photograph by the FBI, they identified Pierce as the robber.").

However, unlike the line of federal cases upon which Appellant relies, the Commonwealth did not adduce any opinion testimony from Officer Maha, and it did not proffer the officer's testimony for the purpose of identifying Appellant as the assailant. Indeed, as the Commonwealth accurately noted, the victim identified Appellant both in a photographic array and in court. Officer Maha's testimony simply outlined the procedure which the police used to investigate the robbery. Without that testimony, the jury would have been left to speculate about how the police knew to broadcast Appellant's name over the police radio or to include his photograph in the array. For example, absent Officer Maha's testimony, the jury might have inferred that Appellant was known by the police for other criminal conduct and included in the photographic array for that reason alone. Officer Maha's testimony eliminated the potential for speculation and harmful inferences.

Mr. Odom selected Appellant's photograph from an array of eight individuals, and the police searched the neighborhood for the one person

that **Mr. Odom** identified as his assailant, Appellant. In complete contrast to the lay opinions that the prosecution offered in the foregoing federal cases as a means to either identify the defendant or bolster a questionable identification, in the case at bar, the evidence regarding Officer Maha's recognition of Appellant in the video was elicited to explain the methodology of the investigation that culminated with **Mr. Odom** identifying Appellant as his assailant. Thus, we not only reject Appellant's predicate assumption that Officer Maha offered opinion testimony, but we also rebuff Appellant's assertion that the evidence was proffered to establish Appellant's identity as Mr. Odom's assailant. No relief is due.

Moreover, assuming *arguendo* that Officer Maha's testimony that he recognized Appellant in the video and broadcast that information to other officers could be construed as a lay opinion, that testimony is admissible. The applicable version of the evidentiary rule addressing opinion testimony by a lay witness, Pa.R.E. 701, provides in pertinent part:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*See* Pa.R.E. 701.[2]  Hence, to be admissible under this version of the rule, the opinions of a non-expert must be rationally based upon the witness's perceptions and adduced in order to either clarify the witness's testimony regarding personal knowledge, or illuminate a fact in issue, and not based on a specialized knowledge.

In **Commonwealth v. Huggins**, 68 A.3d 962, 966 (Pa.Super. 2013), we addressed a related, but dissimilar, argument concerning "whether the same witness may be proffered to testify regarding both lay and expert opinions without usurping the jury's fact-finding function."  After reviewing the relevant rules of evidence, we concluded that the trial court did not err in admitting both aspects of the opinion testimony therein because both the expert and the lay opinions offered by the witness satisfied the corresponding rules of evidence.  *Id*. at 967.  One of the relevant issues in

_____

[2]  Effective March 18, 2013, our Supreme Court rescinded and replaced the pertinent rule of evidence.  **See** Pa.R.E. 701, Comment.  As Appellant's trial preceded the effective date of the revised rules, we apply the former version of Rule 701 herein.  We observe that Rule 701 currently states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

that case concerned a law enforcement agent's testimony summarizing his opinion of audio recordings of drug-related conversations. In holding that the trial court did not err in permitting that lay opinion testimony, the **Huggins** Court pointed out that the law enforcement agent testified "regarding the investigation in general based upon his personal perceptions, including the identity of the speakers." **Id**. at 968 citing **Commonwealth v. Carpenter**, 372 A.2d 806 (Pa. 1977) (permitting lay witness opinion regarding voice recognition by acquaintance who identified speaker over telephone). Hence, in rejecting the appellant's claim that the lay opinion was improper, we reasoned that the lay witness's association to the evidence was the element that controlled the admissibility of his opinion. **Huggins**, **supra** at 967.

Instantly, Officer Maha's testimony satisfies the three prongs of Rule 701. First, to the extent Officer Maha rendered an opinion, that opinion was based upon his perceptions; specifically, his familiarity with Appellant's appearance due to the officer's prior interactions with Appellant in the neighborhood. Furthermore, Officer Maha explained how his identification of Appellant in the surveillance video was helpful in determining a fact in issue—the integrity of Mr. Odom's selection of Appellant from the photographic array and his in-court identification of Appellant as the armed robber. Thus, even to the extent that we perceive Officer Maha's testimony

as presenting a lay opinion, which we do not, the opinion satisfies the requirements of Rule 701.

Moreover, regarding whether Officer Maha's identification of Appellant in the surveillance video and his explanation of the ensuing police investigation were prejudicial, we note that the trial court instructed the jury to place that information into its proper context. Consistent with the instruction that **Appellant** proposed,[3] the trial court directed, in pertinent part, as follows:

> Officer Maha testified that his identification of [Appellant] in the video was based on him having known [Appellant] from the neighborhood in question. As the trier of fact, it is up to you to determine what weight to assign to that evidence when evaluating the credibility, reliability, and accuracy of his identification of [Appellant].
>
> . . . .
>
> You also heard Officer Maha testify that he saw the video on July 14th, 2010, that he broadcasted [Appellant's] name over police radio for any officers who might know [Appellant] and where he lived.
>
> . . . .
>
> Officer Maha's testimony as to why he broadcasted [Appellant's] name over [the] police radio does not bear on whether [Appellant] is guilty or not guilty, and you are precluded from considering it during your deliberations and from drawing any inferences therefrom.

---

[3]   Although Appellant proffered the proposed cautionary instruction, he argued that no instruction would actually cure Officer Maha's prejudicial testimony. N.T., 4/11/12, at 11.

N.T., 4/11/12, at 33, 74-75. Thus, the trial court specifically instructed the jury that it could not consider Officer Maha's actions in identifying Appellant and broadcasting Appellant's information as probative of Appellant's guilt. Since the jury is presumed to have followed the court's instructions, there is no basis for relief. *See Commonwealth v. Arrington*, 86 A.3d 831, 845, 853 (Pa. 2014).

Herein, the jury reviewed the videotape, considered the victim's identification of Appellant, both in court and from the photographic array, and ultimately determined that Appellant perpetrated the crime. Accordingly, for all of the foregoing reasons, Appellant's claim fails. The trial court did not err in admitting Officer Maha's testimony that he recognized Appellant when he reviewed the Crab House Bar's surveillance video and that he broadcasted that information over the police radio.

Next, we address Appellant's claim that the trial court erred in denying his motion for mistrial following Officer Maha's testimony that he had initiated several investigative stops of Appellant in the neighborhood and that other police officers familiar with the area also knew Appellant. He argues that a mistrial was warranted because Officer Maha's testimony was so prejudicial that it vitiated his presumption of innocence and right to a fair trial. Again, we disagree.

The following facts are relevant. Prior to trial, Appellant filed a motion *in limine* seeking to preclude the Commonwealth from adducing testimony

- 15 -

from Officer Maha that he knew Appellant from the several pedestrian stops and investigations that he performed over the two years that he was assigned to the district. The trial court denied the motion. As noted, during trial, Officer Maha testified about the investigative stops, which he referred to as a "ped investigation." N.T., 4/10/12, at 153-154. Thereafter, Officer Maha defined his short-hand phrase, "It's an investigation where you—an officer reasonably believes that an individual is involved in some type of criminal activity." *Id*. at 154. The trial court sustained Appellant's motion to strike the comment and directed the jury to disregard Officer Maha's statement about criminal activity. *Id*. Later in the direct examination, Officer Maha explained why he broadcasted Appellant's name on the police radio after recognizing him on the surveillance video. He stated, "most officers in the district are familiar with Appellant. They know where he lives, that way they would be able to get to his house." *Id*. at 155. Appellant objected, and the trial court sustained the objection as to what the other police officers knew. *Id*.

At the close of the Commonwealth's case, Appellant moved for a mistrial based upon Officer Maha's reference to criminality in defining his use of the term "ped investigation" and the officer's related comment that other officers in the district knew where Appellant lived. *Id*. at 208-209. The trial court denied the motion and reiterated its prior recommendation that

Appellant craft a curative charge and that the court would hold the jury to its oath to follow the instruction.

We review a trial court's order denying a motion for a mistrial for an abuse of discretion. *Commonwealth v. Fletcher*, 41 A.3d 892, 894 (Pa.Super. 2012). We have explained, "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will, discretion is abused." *Id*. Additionally, "a mistrial is an extreme remedy required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012) (citation and internal quotation marks omitted). A mistrial is not warranted where a cautionary instruction is adequate to cure any possible prejudice. *Fletcher*, *supra* at 894-895.

Herein, upon review of the certified record, we cannot find that the trial court abused its discretion in denying Appellant's motion for a mistrial. Initially, we observe that the trial court sustained Appellant's objections to both of the potentially deleterious statements, and it struck the tainted testimony from the record. Second, the trial court specifically directed the jury to disregard Officer Maha's reference to criminal activity. *See* N.T.,

4/10/12, at 154. Moreover, the trial court issued the following curative instruction, which we reproduce in its entirety as follows:

> During the trial, you heard testimony from Officer Maha that he stopped [Appellant] numerous times for what he referred to as pedestrian stops for investigation. You also heard Officer Maha testify that he saw the video on July 14th, 2010, that he broadcasted [Appellant's] name over police radio for any officers who might know [Appellant] and where he lived.
>
> In determining whether [Appellant] is guilty or not guilty for the purposes of this trial, you are only to consider during your deliberations the alleged activities of [Appellant] on either July 14th, 2010, and August 1, 2010. Any other prior alleged activity of [Appellant] has no bearing upon the facts of this case and should not be entered into your deliberations, and you are precluded from drawing any inferences therefrom.
>
> Moreover, Officer Maha's testimony as to why he broadcasted [Appellant's] name over police radio does not bear on whether [Appellant] is guilty or not guilty, and you are precluded from considering it during your deliberations and from drawing any inferences therefrom.

N.T., 4/11/12, at 74-75. Again, we presume the jury followed the court's instruction. **Arrington**, **supra** at 853.

Additionally, we reject Appellant's argument that the instant scenario presented a catch–22 that required him to remind the jury of Officer Maha's references to criminality, whether express or implicit, in order to cure the harm the statements caused. Despite Appellant's protestations, we conclude that the officer's comments were not incurable. The reference to the prior pedestrian stops did not reveal any specific criminal conduct, and any inference of criminality that could be drawn from the notion that police officers were familiar with Appellant from patrolling the neighborhood where

- 18 -

he resides is remote. Accordingly, we conclude that the trial court's corrective actions in sustaining Appellant's objections, striking the problematic testimony, and issuing the foregoing curative instructions to the jury were sufficient to remedy any prejudice caused by Officer Maha's express and implied references to criminality. As Appellant has failed to establish that the unavoidable effect of Officer Maha's comments was to deprive Appellant of a fair and impartial trial, we affirm the trial court's decision to deny the motion for a mistrial.

In his third issue, Appellant argues that the trial court erred in issuing an inadequate *Kloiber*[4] instruction. He argues that the *Kloiber* charge failed to address defects in Mr. Odom's eyewitness identification, his inebriation when the incident occurred, and his lack of opportunity to see the assailant. Appellant's brief at 33.

Our Supreme Court established that "Under *Kloiber,* a charge that a witness's identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010) (quoting *Commonwealth v. Gibson*, 688 A.2d 1152, 1163 (1997)) (internal citations). However, "where an eyewitness has had

---

[4] *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

protracted and unobstructed views of the defendant and consistently identified the defendant throughout the investigation and at trial, there is no need for such a charge." *Id*.

The instruction given to the jury regarding Mr. Odom's identification of Appellant was as follows:

> In his testimony, Donald Odom has identified the defendant as the person who committed the crime. There's a question whether this identification is accurate. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful, that a jury must receive it with caution. If the witness's positive testimony as to identity is weakened by inconsistencies in the rest of his testimony or by not identifying the defendant at the preliminary hearing before the trial, if you believe this factor is present, then you must consider with caution Mr. Odom's testimony identifying the defendant as the person who committed the crime.

N.T., 4/11/12, at 75-76. Appellant asserts that the trial court's *Kloiber* charge was deficient because it did not advise caution based on Mr. Odom's prior testimony during the preliminary hearing that he was under the influence of alcohol at the time of the incident and that he did not have a good opportunity to view the perpetrator. We disagree with both of these contentions, which we address *seriatim*.

The *Kloiber* charge alerts the jury where a witness might be physically incapable of making a reliable observation. This inquiry is distinct from the credibility determination a fact-finder must make. *Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa.Super. 2013) *appeal denied,* 80 A.3d 774 (Pa. 2013). As we previously explained, "potential intoxication [is] a

question that went to witness's credibility and the reliability of the identification she made, not to any inherent limitation she might have possessed as a witness." *Id*.

In this case, the trial court concluded that the fact that Mr. Odom had imbibed prior to the assault did not affect his ability to make a reliable identification of his assailant. Further, Officer Battista, one of the first officers to interview Mr. Odom, testified that Mr. Odom was coherent immediately after the incident and that he was fully able to understand what Mr. Odom was saying. N.T., 4/10/12, at 129. As there is no evidence that Mr. Odom was so intoxicated that he could not physically make a reliable observation, Mr. Odom's potential intoxication goes to the credibility of the identification and not any limitation that he might have had as a witness. Accordingly, the trial court did not err in declining to advise caution to the jury based on Mr. Odom's testimony that he was under the influence of alcohol at the time of the robbery.

Appellant also complains that the *Kloiber* instruction failed to advise caution based on Mr. Odom's prior indication during the preliminary hearing that he did not have an opportunity to see the perpetrator. However, the certified record belies the contention that Mr. Odom's view was obstructed. In fact, it is clear that Mr. Odom identified the Appellant both in a photo array after the robbery and during the trial. N.T., 4/10/12, at 74, 77-78. Further, Mr. Odom testified that he interacted with Appellant face-to-face

during the robbery. *Id*. at 71-73. Photographic stills from the bar's surveillance video confirm that Mr. Odom faced Appellant at several points during the ordeal. *See* Commonwealth Exhibit C-4. Thus, the trial court did not err in declining to advise caution based on Mr. Odom's statement that he did not have an opportunity to see his assailant.

Further, assuming that the crux of Appellant's claim is that Mr. Odom failed to identify Appellant during the preliminary hearing, we observe that the trial court did, in fact, caution the jury with regard to this specific inconsistency. The trial court advised, "You have heard that . . . Donald Odom . . . made a statement on an earlier occasion that was inconsistent with his present testimony. You may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by the witness at trial." *See id*. at 76-77. As the jury is presumed to have followed the court's instruction, no relief is due.

Appellant's final issue implicates the discretionary aspect of the judgment of sentence. Before we reach the merits of a discretionary sentencing issue, we must ascertain whether 1) a timely appeal was filed from the judgment of sentence; 2) the issue was preserved during the trial court proceedings; 3) the appellant complied with Pa.R.A.P. 2119(f); and 4) the Rule 2119(f) statement reveals a substantial question that the sentence

was not appropriate under the sentencing code. ***Commonwealth v. Lebarre***, 961 A.2d 176, 178 (Pa.Super. 2008).

Herein, Appellant's notice of appeal was filed timely. Likewise, Appellant raised his sentencing issue in a post-sentence motion and leveled the challenge in his Rule 1925(b) statement. Additionally, Appellant included in his brief a concise statement of reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant's sentencing issue raises a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247 (Pa.Super. 2014) (*en banc*) (*quoting* ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa.Super. 2012)).

Appellant asserts that the judgment of sentence was manifestly excessive, unreasonable and surpassed what was required to protect the public or foster his rehabilitation. The cruxes of Appellant's challenge are: (1) the trial court erred in imposing what amounts to the statutory maximum punishment for each of the four convictions; and (2) the trial court relied upon impermissible factors, including his refusal to accept responsibility for his actions and his rejection of a plea offer. Appellant's contentions raise a substantial question that the sentence was not

appropriate under the sentencing code. *See Commonwealth v. Daniel*, 30 A.3d 494 (Pa.Super. 2011) (allegation that court unreasonably sentenced outside guidelines raises substantial question); *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa.Super. 2006) ("claims that a penalty is excessive and/or disproportionate to the offense can raise substantial questions").

> Our standard of review for sentencing claims is well settled.

> Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Commonwealth v. Johnson,* 967 A.2d 1001 (Pa.Super. 2009). An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957 (2007).

*Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010).

In *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007), our Supreme Court observed that appellate review of the discretionary aspects of a sentence is outlined in 42 Pa.C.S. § 9781(c) and (d). As it relates to the assertion Appellant levels herein, § 9781(c) provides that a reviewing court may vacate a sentence if it finds, "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). This Court subsequently defined "unreasonable" as follows:

> The *Walls* Court noted that the term "unreasonable" generally means a decision that is either irrational or not guided by sound judgment. It held that a sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b).[1]

- 24 -

_____

[1] Section 9721(b) states in pertinent part:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing[.]

_____

*Daniel*, *supra* at 497.

Section 9781(d) directs that we assess the reasonableness of a sentence based upon the following factors:

> **(d) Review of record.--**In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

As noted, Appellant asserts that the trial court abused its discretion in imposing eighteen and one-half to thirty-seven years imprisonment. He posits that the imposition of the statutory maximum punishment is manifestly unreasonable. We disagree.

Upon our review of the certified record and examination of the penalty pursuant to 42 Pa.C.S. § 9781, and the sentencing factors outlined in 42 Pa.C.S. § 9721(b), we find no basis to vacate the judgment of sentence as unreasonable. First, while Appellant's prior record score was one at the time of sentencing, he had an extensive criminal history, which the Commonwealth described as including juvenile arrests for multiple drug offenses, armed robbery, two aggravated assaults, and riot. Later, as an adult, Appellant accrued three additional arrests for aggravated assault, and one each for robbery and recklessly endangering another person, the latter based on a domestic assault of his child's mother. Further, the certified record reveals that the trial court considered the nature and circumstances of the offense, reviewed the sentencing guidelines and presentence investigation report, and accounted for Appellant's insincerity and lack of genuine remorse.

The trial court proffered the following reasons for fashioning this specific sentence.

> [Appellant], I don't feel that your remorse is genuine. I think that at the time of the robbery you knew exactly what you were doing.
>
> I have considered the Pennsylvania [S]entencing [C]ode, the presentence report that highlights your past, the guidelines on sentencing, what you've had to say.
>
> I acknowledge that today in court you wish that this all didn't happen, right?
>
> . . . .

I think that that is mostly because you have been convicted by a jury of the community, the same community that is terrorized by those that would carry a handgun on the streets of Philadelphia and use that weapon to rob people.

You have a past assaultive behavior.

I've considered your age, what [the attorneys] had to say[.] . . . And what you've done is hurt the community. You've hurt yourself, your family.

I've considered your background, as I've said; your character; rehabilitation needs[;] the nature and circumstances; the seriousness of this crime; the number of related cases; your caretaking responsibility for a child that is being raised by the child's . . . maternal grandmother; the need to protect the community; the harm here and severity; the risk of you committing another crime, and I think that this risk is high; and the degree a lesser sentence would depreciate the seriousness of the crime.

You are in need of correctional treatment. But after seven commitments in juvenile and not being able to take anything from that, I question whether or not you are going to be able to learn anything.

N.T., 8/29/12, at 22-23.

The certified record confirms that the trial court considered the sentencing guidelines, the nature and circumstances of the robbery, and Appellant's criminal history. Likewise, it heard Appellant's sentencing allocution, reviewed the presentence investigation, and summarized its findings on the record. As the trial court had the benefit of a presentence investigation, we are required to presume all of the sentencing factors were weighed. **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa.Super. 2009). Accordingly, when viewed in light of the four statutory factors

outlined in 42 Pa.C.S. § 9781(d) and the factors outlined in § 9721(b), we find that the trial court was not clearly unreasonable. As we stated in **Walls**, **supra** at 963, an unreasonable sentence is irrational or not guided by sound judgment.

Instantly, notwithstanding Appellant's protestations to the contrary, the trial court's decision to impose the statutory maximum penalties in this case is neither irrational nor unsound. The trial court considered the protection of the public, the gravity of the offense, its impact on the victim and the community, and Appellant's rehabilitative needs. The facts and circumstances surrounding the robbery and related offenses, and the trial court's express review of the presentence investigation report supports the trial court's determination. Thus, we will not disturb it.

Additionally, we reject Appellant's argument that the imposition of consecutive sentences was tantamount to legal error because the court's primary purpose of fashioning consecutive sentences was to achieve an extended period of incarceration. **See** Appellant's brief at 41. First, it is well settled that the decision to impose sentences consecutively or concurrently is a matter of trial court deference. **See Commonwealth v. Prisk**, 13 A.3d 526 (Pa.Super. 2011) ("Generally, Pennsylvania law "affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed."). Furthermore, Appellant's specific argument, which relies upon

our discussion regarding the reasonableness of consecutively-imposed sentences in **Commonwealth v. Coulverson**, 34 A.3d 135 (Pa.Super. 2011), is misguided.

In **Coulverson**, we concluded that the imposition of an aggregate sentence of eighteen to ninety years in prison for consecutively-imposed sentences for rape and related sex offenses was unreasonable due to the sentencing court's fixation with the victim's impact statement and its disregard for the defendant's rehabilitative needs. **Id**. at 149-150. We explained,

> while a crime's impact on the victim continues to be a significant element of a sentencing judge's consideration, the court may not ignore the continuum of circumstances underlying a defendant's criminal conduct, society's need for rehabilitation, or the statutory factors enunciated in our Sentencing Code on the way to imposing a maximum sentence. Nor may it aggregate consecutive sentences merely to achieve extended incarceration if the totality of the sentencing factors involved, **see Walls**, **supra**; [**Commonwealth v. Dodge**, 957 A.2d 1198 (Pa.Super. 2008)], has not been considered and acknowledged. In this regard, the trial court's consideration here was plainly inadequate, its explanation scant, and the resulting maximum sentence manifestly excessive.

**Id**. at 150.

Appellant implies, without significant legal argument or citation to the relevant portion of the certified record, that the trial court's goal of achieving an extended period of incarceration was impermissible per se. Unfortunately for Appellant, the **Coulverson** Court did not issue a bright-line holding that precluded the aggregation of sentences, even where the purpose was to

achieve an extended period of incarceration. As is evident from the preceding passage, the **Coulverson** Court simply restated the obvious and concluded that a sentencing court may not ignore certain sentencing factors in favor of elevating others or impose consecutive sentences without first considering **all** of the relevant sentencing factors under § 9721(b) and § 9781(d). That is, sentencing courts may not "aggregate consecutive sentences merely to achieve extended incarceration **if** the totality of the sentencing factors involved . . . has not been considered and acknowledged." **Id**. (emphasis added).

Instantly, the trial court considered and elucidated all of the relevant sentencing factors, including the troubling circumstances of Appellant's childhood, his relationship with his daughter, and his rehabilitative needs, prior to fashioning an aggregate term of eighteen and one-half to thirty-seven years imprisonment. Accordingly, since the trial court considered the totality of the sentencing factors in this case, Appellant's challenge to the discretionary aspect of sentencing on this basis fails.

Finally, the certified record belies Appellant's contention that the trial court relied upon impermissible sentencing factors. Appellant argues that the trial court cited his failure to take responsibility for his crimes and his rejection of a reasonable plea offer as two bases to increase his punishment. Appellant is mistaken. First, notwithstanding Appellant's perspective of the law, a defendant's refusal to show remorse for his crime is a legitimate

sentencing consideration. **See Commonwealth v. Bowen**, 975 A.2d 1120, 1125 (Pa.Super. 2009) ("it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs."). Moreover, Appellant's argument ignores the context of the trial court's reference to his lack of contrition and the rejection of the plea agreement. Simply stated, the trial court's references related to the obvious insincerity of Appellant's apology to his family and the victim. The trial court pointed out that, while Appellant proposed to take responsibility for his actions during sentencing, when he was presented with the plea agreement, he refused to accept responsibility for the crimes. Specifically, after highlighting Appellant's supposed contrition during the sentencing proceeding, the trial court inquired, "But when we were in trial, why didn't you take full responsibility for it then?" N.T., 8/29/12, at 18. Later, the court reiterated, "I don't feel that your remorse is genuine. I think that at the time of the robbery you knew exactly what you were doing." **Id**. at 22.

Thus, contrary to Appellant's attempt to twist the nature of the court's comments in order to support his argument that the trial court punished him for availing himself to his right to a jury trial, in reality, the trial court only noted that fact in order to emphasize Appellant's feigned contrition during allocution. As outlined *supra*, the trial court proffered a litany of reasons for

fashioning the particular sentence in this case, and beyond the limited context of challenging the sincerity of Appellant's eleventh-hour apology, the trial court did not identify Appellant's rejection of the plea agreement as a factor in its decision. *See id*. at 22-23. Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2014